UNITED STATES, Appellee

v

FRANK E. CROOKS, Jr., Captain,
U. S. Army, Appellant

12 USCMA 677, 31 CMR 263

No. 15,031

March 9, 1962

*Lieutenant Colonel Ralph W. Wofford* argued the cause for Appellant, Accused. With him on the brief were *Colonel Harley A. Lanning* and *Captain Vernon C. Maulson.*

*Captain Barry L. Kroll* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy* and *Major Francis M. Cooper.*

## Opinion of the Court

QUINN, Chief Judge:

Repudiating contrary statements to an Article 32 investigating officer, three German nationalists testified before a general court-martial in Frankfurt am Main, that the accused entered a German gasthaus while wearing his field uniform. The court-martial convicted the accused of a charge of "appearing in a public establishment in a field uniform," in violation of Paragraph 8e, United States Army, Europe, Circular 670-5, and of falsely testifying under oath before an Article 32 investigating officer that he did not enter the gasthaus, in violation of

Article 131, Uniform Code of Military Justice, 10 USC § 931. It sentenced him to be dismissed from the service. Intermediate appellate authorities affirmed the conviction and sentence. We granted the petition for review to consider a number of issues raised by the record of trial.

Appellate defense counsel contend that the specification alleging a purported violation of the circular does not state an offense. In material part, the specification reads as follows:

"In that . . . [the accused] did, at Frankfurt am Main, Ger-

678

many, on or about 1900 hours, 20 August 1960, violate a lawful general regulation, to wit: Paragraph 8e, United States Army, Europe, Circular 670–5, dated 16 February 1959, by appearing in a public establishment in a field uniform."

The specification apparently follows the form prescribed in the Manual for the type of offense involved. Manual for Courts-Martial, United States, 1951, Appendix 6c, page 476. That form does not require that the specification set out verbatim the provisions allegedly violated. In United States ■ v Bunch, 3 USCMA 186, 11 CMR 186, we held that a specification is legally sufficient although it omits the specific terms of the order, if it describes the order "clearly and specifically" and sets out the act which "constituted the violation." The Government contends that under the *Bunch* holding the specification here is sufficient. However, mere allegation of the order and the act does not necessarily guarantee a legally unassailable charge. See United States v Strand, 6 USCMA 297, 301, 20 CMR 13. As the *Bunch* case itself points out, the specification may be fatally deficient because of matters affecting the order. For example, we held the specification there, which alleged violation of a general order, legally insufficient because under Navy regulations the issuing authority did not have the power to promulgate an order of that kind. See also United States v Brown, 8 USCMA 516, 25 CMR 20. In United States v Milldebrandt, 8 USCMA 635, 25 CMR 139, we held that determination of the validity of a charge involving the violation of an order requires consideration not only of the source but also the content of the order. If the alleged act of the accused is outside the operative terms of the order, the specification does not spell out a violation of the order. United States v Hogsett, 8 USCMA 681, 25 CMR 185; United States v Ekenstam, 7 USCMA 168, 21 CMR 294. We must, therefore, look to the provisions of paragraph 8e of the circular to determine whether the act charged falls within its terms.

Paragraph 8e provides that the field uniform will not be worn "outside of military installations, except as provided for the work uniform or when performing duty in field exercises outside of military installations." The regulation does not prohibit the wearing of the field uniform generally, with specified exceptions. Consequently, an allegation that the accused merely wore the field uniform does not constitute a sufficient showing that he violated the order. Cf. United States v Gohagen, 2 USCMA 175, 7 CMR 51. The prohibited act is wearing the field uniform *outside military installations*. This is not synonymous with wearing the uniform in a public establishment. As a matter of fact, other paragraphs of the circular recognize that some public establishments, such as the commissary and the exchange, are part of the military installation. Since the specification does not contain any indication, directly or by fair implication, that the public establishment, which is not further described in the specification, was outside military installations, it does not state facts sufficient to show a violation of the order. The findings of guilty, therefore, are set aside and the charge dismissed. United States v Ekenstam, supra; United States v Hogsett, supra.

Turning to the perjury charge, appellate defense counsel maintain that since the order specification does not allege an offense the accused's testimony before the Article 32 investigating officer, to whom the charge had been referred for investigation, is immaterial and does not amount to perjury. The contention is supported by some State court cases. Other courts take the position that failure of the charge or indictment to state an offense does not preclude prosecution for perjured testimony given in the course of the judicial proceedings thereon. The problem and the conflict in judicial opinion were considered by the United States Supreme Court in United States v Williams, 341 US 58, 95 L ed 747, 71 S Ct 595 (1951). The Court held that the fact that the trial court or an appellate court determined that the charge

**679**

does not constitute a crime does not mean that the judicial proceedings in which the determination was made were null and void so as to preclude prosecution of a witness or a party who gave false testimony therein. In pertinent part the Supreme Court said:

". . . Here, however, we have a federal statute enacted in an effort to keep the course of justice free from the pollution of perjury. We have a court empowered to take cognizance of the crime of perjury and decide the issues under that statute. The effect of the alleged false testimony could not result in a miscarriage of justice in this case but the federal statute against perjury is not directed so much at its effects as at its perpetration; at the probable wrong done the administration of justice by false testimony. That statute has led federal courts to uphold charges of perjury despite arguments that the federal court at the trial affected by the perjury could not enter a valid judgment due to lack of diversity jurisdiction, or due to the unconstitutionality of the statute out of which the perjury proceedings arose.

"Where a federal court has power, as here, to proceed to a determination on the merits, that is jurisdiction of the proceedings. The District Court has such jurisdiction. Though the trial court or an appellate court may conclude that the statute is wholly unconstitutional, or that the facts stated in the indictment do not constitute a crime or are not proven, it has proceeded with jurisdiction and false testimony before it under oath is perjury."

In the *Williams* case the Supreme Court reversed a ruling by the district court which dismissed a perjury indictment on the ground, among others, that an earlier indictment for conspiracy on which the defendant was tried, and on the trial in which he perjured himself, was later quashed on appeal. Applying that holding to ▆▆▆▆▆▆ ▆ the instant case, it is apparent that the original Article 32 proceedings on the order

charge were valid, in the sense that the investigating officer had power to proceed to investigate the charge and to make recommendations in regard to its disposition. That the Article 32 investigation is a "judicial proceeding or in a course of justice" within the meaning of Article 131 is not open to question. In a number of cases we referred to the position of the pretrial investigation in the court-martial processes. In United States v Tomaszewski, 8 USCMA 266, 24 CMR 76, we said that "from the standpoint of preliminary preparation, it is fundamentally a part of a general court-martial case." See also Manual for Courts-Martial, supra, paragraph 210, page 375. In United States v Eggers, 3 USCMA 191, 11 CMR 191, we held that a verbatim transcript of the testimony of the witness is admissible in evidence at the trial under the conditions prescribed in Article 49, Uniform Code of Military Justice, 10 USC § 849. We conclude, therefore, that the perjury specification here alleges an offense, notwithstanding that on this appeal we sustain the accused's challenge to the legal sufficiency of the offense which was the subject of investigation.

Aside from the challenge to the sufficiency of the specification, the accused attacks the conviction for perjury on the ground that the law officer's instructions are prejudicial.

First, the accused maintains the law officer failed to instruct on all the elements of the offense. Specifically, he contends the law officer did not instruct the court-martial that it must find the testimony given in the Article 32 investigation was false. The Government concedes that falsity is an element of perjury. Article 131, supra; see also United States v McCarthy, 11 USCMA 758, 29 CMR 574. It insists, however, that the element was, in fact, sufficiently delineated in the instructions given. The instructions are as follows:

"The Additional Charge and Specification charges the accused with perjury in violation of Article 131. To find the accused guilty of this offense, you must be satisfied by legal and competent evidence, beyond

a reasonable doubt: (1) That the accused took an oath in the course of justice, namely: an Article 32 pretrial investigation of charges dated 26 August 1960 preferred against Captain Frank E. Crooks, Junior; (2) That the oath was administered to the accused in a matter in which an oath was required or authorized by law; (3) That the oath was administered by a person having authority to do so; (4) That upon such oath the accused did, at Frankfurt am Main, Germany, on or about, or on 12 July—excuse me, on 12 September 1960, wilfully, corruptly, and contrary to such oath, testify in substance that he did not enter a Gasthaus on 20 August 1960; (5) That such testimony was material; and (6) That the accused did not then believe such testimony to be true. You are further advised that whether the testimony is material is solely a question of law, and you are instructed as a matter of law that the alleged testimony if, in fact, given, was material."

Apparently the instructions are based on the statement of the elements of proof in the Manual for ▮▮▮ Courts-Martial, supra, ▮▮▮ paragraph 210, page 376. This circumstance does not necessarily assure a correct statement of the elements of the offense. United States v Strong, 1 USCMA 627, 5 CMR 55. Nowhere in the instruction is the word "false" used. Cf. Air Force Manual 110–5, Court-Martial Instructions Guide, June 12, 1959, page 64. However, matters upon which an instruction is required need not be presented according to fixed forms of words and phrases. Some words may not be capable of expression different from the operative words of the governing statute. For example, it might be extremely difficult to rephrase adequately the rule that the Government must prove the accused's guilt beyond a reasonable doubt. See Article 51(c), Uniform Code of Military Justice, 10 USC § 851; United States v Offley, 3 USCMA 276, 12 CMR 32. In other instances, while it might be preferable to use the exact terminology of the statutory definition

of the offense, precisely the same requirements of law might be stated in different terms. This is true of the requirement of falsity in a perjury case. Thus, in his separate opinion in United States v Chaney, 12 USCMA 378, 30 CMR 378, Judge Ferguson observed that "the obvious implication" from a statement that the accused took an oath to testify truthfully and that he testified contrary to such oath is "that accused testified falsely for in no other way could he testify contrary to his sworn obligation to tell the truth." Experience and reason indicate that when a person takes an oath in a judicial proceeding in a course of justice he does not swear to lie but to tell the truth. Consequently, although the instruction does not refer to the fact that the accused took an oath to testify truthfully, that is the necessary implication from the instruction that he took an oath in the Article 32 investigation. If, therefore, the accused testifies willfully, corruptly, and contrary to his oath, his testimony must be considered false. In our opinion, therefore, the language used by the law officer sufficiently apprised the court-martial that it must find the accused's testimony in the Article 32 investigation was false. Cf. United States v Chaney, supra.

The second allegation of instructional error is that the law officer erred by failing to instruct the court-martial that the falsity of the alleged perjured statement cannot be proven by the testimony of a single witness without corroboration by another witness or other circumstances tending to prove the falsity of the statement. Manual for Courts-Martial, supra, page 376. No specific request for such an instruction was made. However, appellate defense counsel maintain that the tenor of other requests and the actions of trial defense counsel sufficiently put the law officer on notice that the defense desired an instruction on the so-called "two witness" or corroboration rule. Ordinarily, if the accused requests the instruction, and ▮▮▮ the request is denied, the ▮▮▮ denial constitutes reversible error. Weiler v United States, 323

**681**

US 606, 89 L ed 495, 65 S Ct 548 (1944); Spaeth v United States, 218 F2d 361 (CA 6th Cir) (1955); see also United States v Walker, 7 USCMA 669, 23 CMR 133. Going beyond that rule, counsel maintain that the failure to instruct on the corroboration rule is prejudicial even in the absence of a defense request. Miller v State, 27 Tex App 497, 11 SW 485. We reviewed the conflict in the State courts on the requirement of an instruction in the absence of a request. In United States v Gomes, 3 USCMA 232, 11 CMR 232, we held it was not error to fail to give the instruction in the absence of a request. We said:

"State cases on the requirement of an instruction on corroboration, in the absence of a request therefor, are in conflict. 70 CJS Perjury § 76, page 547. In the Federal courts it is clear that where the evidence requires it, a refusal to instruct on corroboration when specifically requested by defense counsel constitutes prejudicial error. Weiler v United States, supra. If the evidence does not so require, a refusal to charge on a requested instruction would not be reversible error. Goins v United States, 99 F2d 147 (CA 4th Cir) (1938), cert den 306 US 622; O'Leary v United States, 158 Fed 796 (CA 1st Cir) (1907). Where there is no instruction and no request, there is no error. Leyer v United States, 183 Fed 102 (CA 2d Cir) (1910); Venlini v United States, 276 Fed 12 (CA 7th Cir) (1921). Since the procedure in courts-martial should conform as nearly as practicable to that in the Federal courts, we hold that while it is desirable that a law officer instruct the court on the degree of proof required for conviction of the offenses of perjury or false swearing, his failure to do so will not, in absence of request by defense, constitute error prejudicial to a substantial right of accused."

We need not review the basis of our holding in *Gomes*. Instead we move directly to the second aspect of the accused's claim to consider whether anything said in regard to the instruction apprised the law officer that the defense desired the corroboration instruction. Appellate defense counsel point to four matters which they say amount, in the aggregate, to sufficient notice. These are summarized in their brief as follows:

". . . Trial defense counsel indicated that he desired instructions as to witnesses Delp and Gildanowski concerning their truth and veracity (R 106, App Ex 3). Trial defense counsel pointed out to the law officer the direct contradiction between prosecution and defense witnesses as to appellant's presence in a gasthaus on 20 August 1960 and waived an instruction thereon only after being informed by the law officer that he would instruct that 'they have to find he was in the place' (R 107). Trial defense counsel also requested instructions as to alibi (App Ex 1) and reasonable doubt (R 108)."

The matter is not free from doubt. However, the defense emphasis on the essentiality of properly defining the credibility of witnesses who admitted they had previously lied under oath on the very matter in issue and its references to the sharp conflict in the evidence were, in our opinion, sufficient to put the law officer on notice that the accused desired the court be instructed on the special rule of corroboration that applies in a perjury prosecution. United States v Allums, 5 USCMA 435, 18 CMR 59.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside. Charge I and its specification, which alleges a violation of Article 92, Uniform Code of Military Justice, 10 USC § 892, is ordered dismissed. A hearing may be ordered on the additional charge and its specification which alleges a violation of Article 131, Uniform Code of Military Justice, 10 USC § 931.

Judges FERGUSON and KILDAY concur.